IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTHONY EUGENE THOMAS, deceased, by and through his heirs at law and GINGER PACE, Special Friend for the ESTATE OF ANTHONY EUGENE THOMAS, S. DOE, a minor and,<br>SH DOE, a minor,<br><br>      Plaintiffs,<br><br>  vs.<br>CITY OF OVERLAND PARK KANSAS:<br><br>CITY OF OVERLAND PARK,KANSAS POLICE DEPARTMENT,<br><br>JOHN DOUGLASS, Chief of the City of Overland Park Police Department and as an Individual,<br><br> THERESA POAGE, Police Officer of the City of Overland Park, Kansas, as an Individual,<br><br>ANDREW EGER, Police Officer of the City of Overland Park, Kansas,  as an Individual., and<br><br>Does 1-10<br><br>      Defendants. | Case No.:  08-CV- 2513 CM/DJW<br><br>Civil Action   No.<br><br><br><br><br><br>DESIGNATED PLACE FOR TRIAL<br><br>KANSAS CITY, KANSAS |

**COMPLAINT**

**JURY TRIAL REQUESTED**
**NATURE OF ACTION**

1.    This is a civil action for redress of the violation of the rights of Anthony Eugene Thomas,

who, on the early morning hours of December 10, 2006 was shot and killed by Overland Park

Police Officer Theresa Poage and Overland Park Police Officer Andrew Eger in contravention

of Mr. Thomas' rights under the Fourth and Fourteenth Amendments of the United States Constitution.  In addition, plaintiffs seek to redress defendants' violation of the rights of Mr. Thomas and plaintiffs' rights under State Common Law on grounds of excessive force, wrongful death/survival action in violation of the Kansas Constitution and due process protections of the Kansas Constitution.

## JURISDICTION AND VENUE

2.     This action arises under the Civil Rights Act of 1871, 42 U.S.C. § 1983, United States Constitution, and the Common Law of the State of Kansas.  This Court has jurisdiction under 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 1331.  This Court's jurisdiction over State Common Law claims lies on the basis of its supplemental jurisdiction 28 U.S.C. § 1367, *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966).  The amount in controversy exceeds $75,000, exclusive of costs and interest.  All conditions precedent have been performed or have occurred.  To wit, defendant, City of Overland Park and City of Overland Park Police Department, by and through it's City Manager for the City of Overland Park, Kansas and service to/on the City of Overland Park Police Department, were served with proper and sufficient notice pursuant to K.S.A. 12-105(b) said Notice detailing the facts of plaintiffs' claims and complying with all aspects of Kansas substantive and procedural law relating to claims against municipalities and other governmental entities pursuant to the Kansas Tort Claims Act.

3.     Venue is proper in this matter pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.     Plaintiff Ginger Pace Special Friend for the ESTATE OF ANTHONY EUGENE THOMAS, mother and Special Friend for S. DOE, a minor and, SH DOE, a minor, is a resident

of Overland Park, Kansas, a United States Citizen, and Special Friend representing the interests of the deceased as well as all of his surviving heirs at law.

5.      Plaintiff S Doe is the minor child of Anthony Eugene Thomas Deceased, and Special Friend Ginger Pace, and who is a resident of Overland Park, Kansas, and a United States Citizen.

6.      Plaintiff Sh Doe is the minor child of Anthony Eugene Thomas Deceased, and Special Friend Ginger Pace, and who is a resident of Overland Park, Kansas, and a United States Citizen.

7.      Defendant John Douglass, at the times of the events described herein was the Chief of Police of the City of Overland Park, Kansas Police Department.  He is sued in his individual capacity.

8.      Defendant, City of Overland Park, Kansas is a city organized under the laws of the State of Kansas with liability arising from its own misconduct and the negligent acts and failures to act of its employees, Chief of Police John Douglass, City of Overland Park Police Officer Theresa Poage and City of Overland Park Police Officer Andrew Eger.

9.      Defendant, Overland Park Police Department, is a government entity organized under the laws of the State of Kansas with liability arising from its own misconduct and the negligent acts and failures to act of its employees, Chief of Police John Douglass, City of Overland Park Police Officer Theresa Poage and City of Overland Park Police Officer Andrew Eger.

10.      Defendant Theresa Poage is an officer of the City of Overland Park Police Department. She is sued in her individual capacity and as an Overland Park police officer.

11.      Defendant Andrew Eger is an officer of the City of Overland Park Police Department. He is sued in his individual capacity and as an Overland Park police officer.

12.      Defendant John Eger is the Chief of Police for the City of Overland Park, Kansas Police Department is sued in his official and individual capacity.

13.     Defendants Doe 1-10 are unknown at this time but whose capacity will be supplemented when determined.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

14.     On, or about, December 10, 2006 at approximately 1:41a.m, Anthony Eugene Thomas, was shot and killed from a distant range gunshot wound of the chest fired by Overland Park Police Officer Theresa Poage and/ or Overland Park Police Officer Andrew Eger.

15.     On, or about, December 10, 2006, Theresa Poage was a City of Overland Park Police Officer acting individually and on behalf of the City of Overland Park, Kansas, and City of Overland Park Police Department.

16.     On, or about, December 10, 2006, Andrew Eger was a City of Overland Park Police Officer acting individually and on behalf of the City of Overland Park, Kansas, and City of Overland Park Police Department.

17.     At all times herein mentioned Officer Poage's personal police equipment included items that were accessible for immediate use to assist, arrest,  apprehend, detain, deter, or other wise control persons who she made contact with while performing her duties without having to use lethal force to effectuate those duties,  protect herself or others.

18.     At all times herein mentioned Officer Eger's personal police equipment included items that were accessible for immediate use to assist, arrest,  apprehend, detain, deter, or other wise control persons who he made contact with while performing his duties without having to use lethal force to effectuate those duties, protect himself or others.

20.     At all times herein mentioned Officer Poage had a personal communication device that allowed communication with other officers and to the dispatching facility.  This personal communication device was on and operable and allowed for audible recording of the events

immediately prior to and after the interaction with Anthony Eugene Thomas and his shooting death.

21. At all times herein mentioned Officer Eger had a personal communication device that allowed communication with other officers and to the dispatching facility.   This personal communication device was on and operable and allowed for audible recording of the events immediately prior to, and after, the interaction with Anthony Eugene Thomas and his shooting death.

22.    On, or about, December 10, 2006, Officers Theresa Poage, Andrew Eger, and other officers,  responded to 9163 Robinson St. Apt. 1g, Overland Park, Kansas pursuant to a 911 call initiated by Jennifer  Jett.  Jennifer Jett indicated during the 911 call that she believed Mr. Thomas was under the influence of narcotics.

23.    During the above-mentioned 911 call, Jennifer Jett did not allege that Mr. Thomas had perpetrated any violence upon her or any other person.   Jennifer Jett was seeking law enforcement assistance in handling Mr. Thomas's condition.

24.    Jennifer Jett did not express any fear for herself or others during the 911 call. Jennifer Jett did not allege any domestic violence or disturbance between her and Anthony Eugene Thomas.

25.    Prior to arriving at 9163 Robinson, Officer Poage, Office Eger, and other responding officers were updated by 911 dispatches as to the circumstances surrounding their dispatch to the above location.   At no time did Dispatch indicate that Antony Eugene Thomas had become violent and/or was a danger to others or himself.

26.    Upon arrival and prior to making contact with Anthony Eugene Thomas, Officer Poage and Officer Eger confirmed by their own independent observations that no one, including Jennifer Jett, was injured or harmed by Anthony Eugene Thomas.

27.     Officer Poage and Officer Eger were informed by Jennifer Jett that she was not complaining of being assaulted or otherwise harmed.  Her physical appearance and demeanor confirmed that she had not been a victim of assault or any other criminal act which may have been perpetrated by Anthony Eugene Thomas.

28.     Jennifer Jett informed Officer Poage and Officer Eger her concern about Mr. Thomas and his physical condition, confirming the reason behind her 911 call.  Officer Poage and Officer Eger were informed by Jennifer Jett that Anthony Eugene Thomas was injured.  This information was confirmed by the presence of a large amount of blood throughout the apartment as well as a broken sliding glass door.

29.     Officer Poage and Officer Eger searched the apartment of Jennifer Jett for Anthony Thomas.  He was not located therein.

30.     Officer Poage and Officer Eger decided to search the apartment complex for Anthony Eugene Thomas.

31.     Prior to embarking on the search for Anthony Eugene Thomas, Officer Poage and Officer Eger had no reasonable basis to suspect or believe that Anthony Eugene Thomas was a danger to himself or others.

32.     Prior to embarking on the search for Anthony Eugene Thomas, Officer Poage and Officer Eger had no reasonable basis to suspect of believe that Anthony Eugene Thomas had committed a criminal act.

33.     At no time prior to the shooting of Anthony Eugene Thomas did Officer Poage or Officer Eger inquire as to Anthony Eugene Thomas' prior criminal contacts with law enforcement.  Neither Officer Poage nor Officer Eger made a "wants and warrant" check of Anthony Eugene

Thomas prior to determining to use lethal force in attempting to locate him nor prior to the shooting Anthony Eugene Thomas.

34.     Officer Poage drew her service revolver upon leaving the apartment to search for Anthony Eugene Thomas.

35.     Officer Eger drew his service revolver upon leaving the apartment to search for Anthony Eugene Thomas.

36.     Officer Poage had other devices at her disposal, other than her revolver/lethal force, to utilize when searching for the injured Anthony Eugene Thomas.

37.     Officer Eger had other devices at his disposal, other than his revolver/lethal force, to utilize when searching for the injured Anthony Eugene Thomas.

38.     Officer Poage and Officer Eger located Anthony Eugene Thomas in a corridor.

39.     Officer Poage and Officer Eger confirmed that Anthony Eugene Thomas was injured by observing an open wound on Anthony Eugene Thomas' left arm.

40.     Officer Poage had her revolver drawn and pointed it at Anthony Eugene Thomas.

41.     Officer Eger had his revolver drawn and pointed it at Anthony Eugene Thomas.

42.     Anthony Eugene Thomas had been bleeding from his injuries for some time.   Officer Poage and Officer Eger had previously observed blood in the apartment and had followed a trail of blood to locate and find Anthony Eugene Thomas.

43.     Despite other non-lethal means to control and/or assist Anthony Eugene Thomas, Officer Poage and Officer Eger used lethal force to assist/control Anthony Eugene Thomas.

44.     Officer Poage fired her revolver at least towards and at Anthony Eugene Thomas.

45.     Officer Poage shot at and caused  Anthony Eugene Thomas to be killed

46.     Officer Eger fired his revolver at least 3 times towards Anthony Eugene Thomas.

47.     Officer Eger shot at and caused Anthony Eugene Thomas to be killed.

48.     After the shooting of Anthony Eugene Thomas by Officer Poage and Officer Eger, Anthony Eugene Thomas was allowed to exit the corridor.   Anthony Eugene Thomas was tackled by other officers outside the corridor.

49.     Non-lethal force was used by other officers to detain Anthony Eugene Thomas outside the corridor.

50.     Anthony Eugene Thomas died from a distant gunshot wound.

51.     An autopsy was performed on Anthony Eugene Thomas.   The autopsy performed by Michael S. Handler M.D. at the request of the Johnson County Coroner

52.      The autopsy determined that soot, unburned gunpowder particles, and gunpowder stippling were not visible on the skin surrounding the gunshot wound, indicating the shooting was from a distance away.

53.     Michael S. Handler M.D.'s autopsy report did not indicate the presence of soot, unburned gunpowder particles, and/or gunpowder stippling on the clothing of Anthony Eugene Thomas.

54.     The autopsy determined that Anthony Eugene Thomas died of a distant range gunshot would of his right chest.

## COUNT I-EXCESSIVE FORCE BY DEFENDANT THERESA POAGE CONNIZABLE UNDER U.S.C. § 1983

55.     Plaintiffs incorporates by reference paragraphs 1 through 53 as if set forth fully here.

56.     Plaintiff Anthony Eugene Thomas was a citizen of the State of Kansas and the United States of America on December 10, 2006.

57.     Defendant Theresa Poage acted under the color of law through custom and practice for the City of Overland Park, Kansas and the City of Overland Park Kansas Police Department on the day in question.

58.     Defendants Theresa Poage without an arrest warrant, nor with probable cause seized Anthony Eugene Thomas in violation of plaintiff's right to be from unreasonable search and seizure.

59.     Defendants' shooting of Anthony Eugene Thomas constituted an unreasonable seizure.

60.     As a direct and proximate cause of defendant Theresa Poage's unlawful shooting of Anthony Eugene Thomas, committed under color of law and defendant Theresa Poage's individual authority as a City of Overland Park police officer, Anthony Eugene Thomas suffered grievous bodily harm and was deprived of his right to be secure in his person against the unreasonable seizure of his person and the use of excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

61.     As a direct and proximate result of the conduct of defendant Theresa Poage, Anthony Eugene Thomas suffered the aforementioned severe and permanent injuries including death and damages.

62.     Defendant Theresa Poage's behavior was wanton and in willful disregard of plaintiff's federally protected rights.

63.     Plaintiffs' seek award of attorney fees and cost pursuant to 42 U.S.C. § 1988.

   WHEREFORE, plaintiffs pray for judgment against defendant Theresa Poage in her individual as well as official capacity as a police officer for the City of Overland Park Police Department for compensatory and punitive damages in an amount in excess of $75,000, plus the costs of this action, attorney's fees and such other relief as this Court may deem fair and appropriate for the circumstances.

## COUNT II-EXCESSIVE FORCE BY DEFENDANT THERESA POAGE CONNIZABLE UNDER U.S.C. § 1983

64.     Plaintiffs incorporates by reference paragraphs 1 through 62 as if set forth fully here.

65.     Plaintiff Anthony Eugene Thomas was a citizen of the State of Kansas and the United States of America on December 10, 2006.

66.     Defendant Andrew Eger acted under the color of law through custom and practice for the City of Overland Park, Kansas and the City of Overland Park Kansas Police Department on the day in question.

67.     Defendant Andrew Eger without an arrest warrant, nor with probable cause seized Anthony Eugene Thomas in violation of plaintiff's right to be from unreasonable search and seizure.

68.     Defendants' shooting of Anthony Eugene Thomas constituted an unreasonable seizure.

69.     As a direct and proximate cause of defendant Andrew Eger's unlawful shooting of Anthony Eugene Thomas, committed under color of law and defendant Andrew Eger's individual authority as a City of Overland Park police officer, Anthony Eugene Thomas suffered grievous bodily harm and was deprived of his right to be secure in his person against the unreasonable seizure of his person and the use of excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

70.     As a direct and proximate result of the conduct of defendant Andrew Eger, Anthony Eugene Thomas suffered the aforementioned severe and permanent injuries including death and damages.

71.     Defendant Andrew Eger behavior was wanton and in willful disregard of plaintiff's federally protected rights.

72.     Plaintiffs' seek award of attorney fees and cost pursuant to 42 U.S.C. § 1988.

        WHEREFORE, plaintiffs pray for judgment against defendant Andrew Eger in his individual as well as official capacity as a police officer for the City of Overland Park Police Department for compensatory and punitive damages in an amount in excess of $75,000, plus the

costs of this action, attorney's fees and such other relief as this Court may deem fair and appropriate for the circumstances.

## COUNT III- VIOLATION OF BODILY INTERGITY BY DEFENDANT POAGE UNDER 42 U.S.C. §1983

73.     Plaintiffs incorporates by reference paragraphs 1 through 71 as if set forth fully here.

74.     Defendant Theresa Poage, in shooting Anthony Eugene Thomas, while acting under the color of state law, subjected him to an unreasonable bodily intrusion in violation of his substantive due process rights under the Fourth and Fourteenth Amendment of the United States Constitution

75.     The unreasonable bodily intrusion committed by defendant Theresa Poage was in violation of clearly established law: Defendant Theresa Poage's unreasonable bodily intrusion was not objective reasonable and defendant Theresa Poage is not entitled to qualified immunity.

76.     Defendant Norman clearly violated Timothy Michael Fry's constitutional rights Of which defendant Norman should have reasonably known.

77.     Defendant Theresa Poage's unlawful shooting  of Anthony Eugene Thomas was conduct so egregious that it may be fairly said to shock the contemporary conscious; that behavior was malicious, wanton and in willful disregard of plaintiff's rights.

78.     The direct and proximate result of the conduct of defendant Theresa Poage as aforementioned deprived Anthony Eugene Thomas of his right to be secure in his person in violation of the Fourth and Fourteenth Amendments to the United States Constitution and for which a remedy is provided under 42 U.S.C. § 1983.

WHEREFORE, plaintiffs pray for judgment against defendant Theresa Poage for compensatory and punitive damages in an amount in excess of $75,000, plus the costs of this action, attorney's fees and such other relief as this Court may deem fair and appropriate for the

circumstances.

## COUNT IV- VIOLATION OF BODILY INTERGITY BY DEFENDANT EGER
## UNDER 42 U.S.C. §1983

79.     Plaintiffs incorporates by reference paragraphs 1 through 77 as if set forth fully here.

80.     Defendant Andrew Eger, in shooting Anthony Eugene Thomas, while acting under the color of state law, subjected him to an unreasonable bodily intrusion in violation of his substantive due process rights under the Fourth and Fourteenth Amendment of the United States Constitution

81.     The unreasonable bodily intrusion committed by defendant Andrew Eger was in violation of clearly established law: Defendant Andrew Eger's unreasonable bodily intrusion was not objective reasonable and defendant Andrew Eger is not entitled to qualified immunity.

82.     Defendant Andrew Eger clearly violated Timothy Michael Fry's constitutional rights Of which defendant Andrew Eger should have reasonably known.

83.     Defendant Andrew Eger's unlawful shooting  of Anthony Eugene Thomas was conduct so egregious that it may be fairly said to shock the contemporary conscious; that behavior was malicious, wanton and in willful disregard of plaintiff's rights.

84.     The direct and proximate result of the conduct of defendant Andrew Eger as aforementioned deprived Anthony Eugene Thomas of his right to be secure in his person in violation of the Fourth and Fourteenth Amendments to the United States Constitution and for which a remedy is provided under 42 U.S.C. § 1983.

WHEREFORE, plaintiffs pray for judgment against defendant Andrew Eger for compensatory and punitive damages in an amount in excess of $75,000, plus the costs of this action, attorney's fees and such other relief as this Court may deem fair and appropriate for the circumstances.

## COUNT V- FAILURE TO INSTRUCT, TRAIN, SUPERVISE, CONTROL AND DISCIPLINE DIRECTED AGAINST THE CITY OF OVERLAND PARK, KANSAS POLICE DEPARTMENT COGNIZABLE UNDER 42 U.S.C.§ 1983

85.     Plaintiffs incorporates by reference paragraphs 1 through 83 as if set forth fully here.

86.     At all times relevant to this complaint, defendant Theresa Poage, as a police officer with the City of Overland Park Police Department, was acting under the direction and control of the City of Overland Park and Overland Park Police Department, which was responsible for making of policy of said department, its officers and operations, and defendant Theresa Poage was acting pursuant to either official policy or the practice, custom and usage of the department.

87.     Acting under the color of law, by and through the policy makers of the City of Overland Park, in their capacity as employees of the City of Galena, and pursuant to the official policy or custom and practice, the City of Overland Park intentionally, knowingly and recklessly or with deliberate indifference to the rights of Anthony Eugene Thomas failed to instruct, train, supervise, control and/or discipline on a continuing basis defendant Theresa   Poage, and defendant Andrew Eger in the performance of their duties to refrain from:

(a) Unlawfully and unreasonably attempting to seize plaintiff to effectuate an unlawful arrest;

(b) Unlawfully and unreasonably using excessive force; i.e. using deadly force to combat non-deadly force or causing deadly force in situations that could be controlled by using other means;

(c) Unlawfully and unreasonably assaulting with a deadly weapon a citizen and otherwise using unreasonable and excessive force before, during and after attempting to make an arrest, whether or not the arrest was lawful; and

(d) Otherwise depriving Anthony Eugene Thomas of his constitutional and statutory rights, privileges, and immunities.

88.     The City of Overland Park, through the City of Overland Park Police Department, had

knowledge of or should have had knowledge, that had it diligently exercised its duties to instruct,

train, supervise, control and discipline on a continuing basis, that the wrongs that were done or

other unlawful or unconstitutional acts were going to be committed.

89.     The City of Overland Park, by and through the City of Overland Park Police Department,

had power to prevent or aid in preventing the commission of said wrongs and intentionally,

knowingly or with deliberate indifference to the rights Anthony Eugene Thomas failed or

refused to do so.

90.     There is an "affirmative link" between Anthony Eugene Thomas' untimely and

unwarranted death and the City of Overland Park's failure to insure that its police department

properly trained, instructed, supervised, controlled and/or disciplined and that if the city, by and

through the police department had properly performed their duties, officers Poage and Eger

would not have used deadly force which ultimately resulted in Anthony Eugene Thomas' death.

91.     The action of the city, by and through the Galena Police Department, were

wanton, willful and with deliberate indifference of plaintiff's rights.

        WHEREFORE, plaintiffs pray for judgment against the City of Overland Park, by and

through the City of Overland Parks Police Department for compensatory and punitive damages

in an amount in excess of $75,000, plus the costs of this action, attorney's fees and such other

relief as this Court may deem fair and appropriate for the circumstances.

**COUNT VI - SUPERVISORY LIABILITY OF JOHN DOUGLASS, CHIEF OF POLICE
CITY OF OVERLAND PARK POLICE SDEPARTMENT COGNIZABLE UNDER 42
U.S.C. § 1983**

92.   Plaintiffs incorporate herein by reference as though fully set forth in paragraphs

1 through 91.

93.   Defendant, John Douglass, was at the time of the incident in question, Chief of Police for the City of Overland Park Police Department.

94. Acting under the color of law, pursuant to official policy and practice, defendant Douglass knowingly and recklessly, or with deliberate indifference to the rights of plaintiff, failed to instruct, supervise, control and/or discipline on a continuing basis, defendants Poage and Eger in performance of their duties to refrain from:

(a) Unlawfully and unreasonably assaulting with a deadly weapon a citizen and otherwise using unreasonable and excessive force before, during and after attempting to make an arrest, whether or not the arrest was lawful;

(b) Unlawfully and unreasonably using excessive force; i.e., using deadly force to combat non-deadly force or causing deadly force in situations that could be controlled by using other means; and

(c) Otherwise depriving a citizen, Anthony Eugene Thomas, of his constitutional and statutory rights, privileges, and immunities.

95.   Defendant Douglass had knowledge of or, had he diligently exercised his duty to instruct, supervise, control and/or discipline on a continuing basis should have had knowledge that the wrongs that were done, asserted or alleged, or other unlawful acts were going to be committed.

96.   Defendant Douglass had the power to prevent or aid in preventing the commission of said wrongs, could have done so, and knowingly and with deliberate indifference of the rights of Anthony Eugene Thomas failed or refused to do so.

97. Defendant Douglass, directly or indirectly, under the color of law proved or ratified the unlawful and unreasonable conduct of defendants Poage and Eger.

98. There is an "affirmative link" between plaintiff Anthony Eugene Thomas' untimely and unwarranted death and defendant Douglass' failure to instruct, train, supervise, control and/or discipline and that if defendant Douglass had properly carried out his duties defendants Poage and Eger would not have undertaken the acts, errors and omissions, which ultimately resulted in Anthony Eugene Thomas' death.

99. The failure to train, instruct, and supervise by defendant Douglass was in violation of clearly established law: Defendant Douglass' failure to supervise was not objectively reasonable and defendant Douglass is not entitled to qualified immunity.

100.  As a result of defendant Douglass' failure to instruct, train, supervise, control and/or discipline his subordinates, specifically but not limited to defendants Poage and Eger, he deprived Anthony Eugene Thomas of his right to be free from unlawful and unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution and remediable under 42 U.S.C. § 1983.

101. As a result of defendant Douglass' failure to instruct, train, supervise, control and/or discipline his subordinates, specifically but not limited to defendants Poage and Eger, he deprived Anthony Eugene Thomas of his right to be free from the use of excessive force upon him in violation of the Fourth and Fourteenth Amendments of the United States Constitution and remediable under 42 U.S.C. § 1983.

102. Defendant Douglass has a non-delegable duty to train and supervise his employees to avoid injury to members of the public as a result of his deliberate disregard of the public's constitutional rights.

103.  Defendant's behavior was in wanton and willful disregard to plaintiff's rights.

WHEREFORE, plaintiffs pray for judgment against defendant John Douglas for

compensatory and punitive damages in an amount in excess of $75,000, plus the costs of this action, attorney's fees and such other relief as this Court may deem fair and appropriate for the circumstances.

**COUNT VII**
**WRONGFUL DEATH/SURVIVAL ACTION**

104.   Plaintiffs incorporate herein by reference as though fully set forth in paragraphs

1 through 103

105. Ginger Pace, as Executor of the Estate of Anthony Eugene Thomas as well as an

heir at law seeks on behalf of Mr. Thomas' estate and other heirs at law compensation for wrongful death and a survival claim.

106. Defendants, each of them, individually and in their official capacities through their acts, errors, and omissions directly and proximately caused the death of Anthony Eugene Thomas.

107. Plaintiffs, the Estate of Anthony Eugene Thomas, Ginger Pace, Samantha Thomas, and Sherry Thomas as his remaining heirs at law have suffered damage in the form of the loss of a father, and provider, including, but not limited to, loss of support, guidance, companionship, and society.

WHEREFORE, plaintiffs pray for judgment against defendants, jointly and sevrally for compensatory and punitive damages in an amount in excess of $75,000, plus the costs of this action, attorney's fees and such other relief as this Court may deem fair and appropriate for the circumstances.

RESPECTFULLY SUBMITTED,

Walter R. Simpson Mo. Bar #19975
Sanders & Simpson, P.C.
1125 Grand Blvd., suite 1500
Kansas City, MO 64106
816-471-6444; fax 816-471-6664

and

G. Michael Fatall Ks. Bar #13603
1125 Grand Blvd., suite 1500
Kansas City, MO 64106
816-471-6444; fax 816-471-6664

ATTORNEYS FOR PLAINTIFFS